UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SAYED MIRWAIS HAYDARY, )
)
Plaintiff, )
)
vs. ) Case No. 4:24 CV 836 JMB
)
MERRICK B. GARLAND, ALEJANDRO N. MAYORKAS, UR M. JADDOU, ANTONY J. BLINKEN, )
)
Defendants. )

**MEMORANDUM AND ORDER**

This matter is before the Court is Defendants' Motion to Dismiss (Doc. 5). For the reasons set forth below, the Motion is **GRANTED** and this matter is **DIMISSED with prejudice**.

## I. Introduction

Plaintiff Sayed Mirwais Haydary, filed a *pro se* complaint on June 17, 2024 (Doc. 1) alleging that Defendants, in violation of federal law, failed to expeditiously adjudicate his request to permit his family to enter the United States from Azerbaijan. Plaintiff alleges that he made his request pursuant to a "humanitarian parole" process, but that Defendants have failed to adjudicate his request for over two years. As a result, he alleges that six family members, who are all Afghan nationals, have suffered from the unreasonable delay. He claims violations of the Administrative Procedures Act (APA), 5 U.S.C. § 701, *et seq*. (Count I) and the Mandamus and Venue Act of 1962 (MVA), 28 U.S.C. § 1361 (Count II), and he seeks relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*. (Count III). In his prayer for relief, he seeks a particular order directing Defendants to adjudicate his request within 60 days.

In their Motion to Dismiss, Defendants argue that this Court lacks subject matter jurisdiction over the claims alleged (Doc. 5). Plaintiff filed a response (Doc. 8),[1] to which Defendants replied (Doc. 10).

## II. Standard

Jurisdiction is a threshold requirement which may be raised at any time and by any party or the court. Gray v. City of Valley Park, Mo., 567 F.3d 976, 982 (8th Cir. 2009). See also, City of Kansas City, Mo. v. Yarco Co., Inc., 625 F.3d 1038, 1040 (8th Cir. 2010) ("Federal courts have an independent duty to determine subject matter jurisdiction, even where the matter is raised for the first time on appeal and on the court's own motion."). The burden of proving subject matter jurisdiction belongs to the Plaintiff, as the party asserting jurisdiction. V S Ltd. P'ship v. Dep't of Housing & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000); See also, Magee v. United States, 9 F.4th 675, 680 (8th Cir. 2021) ("The burden of proving the existence of subject matter jurisdiction rests with the party invoking federal jurisdiction.").

In considering a Federal Rule of Civil Procedure 12(b)(1) motion, the Court must first determine whether Defendants are making a facial or a factual challenge to the assertion of subject matter jurisdiction. Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) ("In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments."); Branson Label, Inc. v. City of Branson, Mo., 793 F.3d 910, 914 (8th Cir. 2015). A facial challenge presumes that the factual

[1] Defendants point out the response was late and that it was mailed from "The Anwari Law Firm" located in Falls Church, Virginia. Defendants state that the Court should be concerned that Plaintiff's filings may be "ghostwritten" by an attorney who has not entered an appearance and that Plaintiff should therefore not be entitled to any leeway that his *pro se* status may afford. Defendants do not, however, seek any particular relief (like the striking of a pleading) as to these circumstances.

The Court notes that in documents attached to the Complaint, attorney Deeba Anwari represents that she is Plaintiff's attorney of record in the immigration proceedings (Docs. 1-1 and 1-2). It certainly would be helpful to the Court if Attorney Anwari entered an appearance in this matter, especially given the complicated legal nature of this case. However, Plaintiff is not required to retain his immigration lawyer as his attorney of record in this civil case.

allegations in the complaint are true but that some element necessary for subject matter jurisdiction is missing. Titus, 4 F.3d at 593. Defendants here are asserting a factual challenge to Plaintiff's claims; that Plaintiff has not proven jurisdiction. On such an attack, Plaintiff does not benefit from the factual safeguards inherent in a Rule 12(b)(6) analysis and the Court may look at other evidence to determine the facts. Carlsen v. Gamestop, Inc., 833 F.3d 903, 908 (8th Cir. 2016); Osborn v. United States, 918 F.2d 724 (8th Cir. 1990).

Typically, any factual disputes would be resolved by the Court through an evidentiary hearing. Osborn, 918 F.2d at 730. In this particular case, however, Defendants do not dispute the facts laid out in the Complaint; there are no factual disputes. Rather, Defendants have supplemented the record to include a recitation of the administrative process, and structure and content of the relevant immigration policies, that inform the decision-making of which Plaintiff complains. Indeed, Defendants argue that a determination of subject matter jurisdiction relies on purely legal conclusions, albeit with an understanding of the administrative process. Plaintiff does not object to Defendants' framing of the issues nor does he request an evidentiary hearing. In his Complaint, he refers to the very "USCIS Rules and standards" that the Defendants have explained through an affidavit (Doc. 1, p. 6, ¶ 26). Even if Plaintiff were to make a request for an evidentiary hearing, there is no showing that there are any facts in dispute that would require resolution. The Court finds that an evidentiary hearing is unnecessary, that there are purely legal issues for consideration, and that this matter may be resolved on the papers.

## III. Background

It is undisputed that Plaintiff is a United States citizen who applied for humanitarian parole on behalf of six family members on February 18, 2022, after the United States ceased operations in Afghanistan and the Taliban took over (Doc. 1, p. 3, ¶ 9). Plaintiff represents that his family moved from Kabul, Afghanistan due to the "looming danger" posed by the Taliban takeover and currently suffer from the lack of decision on the request for humanitarian parole. On September 15, 2022, Plaintiff's attorney, Deeba Anwari, sent an e-mail to the United States Citizenship and Immigration Service's (USCIS) Humanitarian Affairs Branch requesting that the applications be processed expeditiously. She states that Plaintiff's family was attacked on the road and that certain family members were killed – she also noted the dire economic crisis and difficulty with necessities experienced in Afghanistan (Doc. 1-2). It is unclear whether Plaintiff informed USCIS that his family was in Azerbaijan, as alleged in his Complaint. On January 30, 2023, the USCIS informed Plaintiff that while it normally would take 90 to 120 days to process his request, the processing time will take longer than 90 days due to high volume (Doc. 1-1). Plaintiff's applications remain pending.

Brandon Prelogar is the Chief of the International and Refugee Affairs Division (IRAD) within the USCIS, which is a division of the Department of Homeland Security headed by Secretary Alejandro N. Mayorkas (Doc. 6-2, ¶ 1). Mr. Prelogar is responsible for policy decisions related to Parole Operations, a component of IRAD and formerly known as the Humanitarian Affairs Branch, which adjudicates the parole requests made by individuals like Plaintiff (Id. ¶ 2). It is undisputed that Mr. Prelogar has a vast array of expertise in United States' policies and procedures related to humanitarian migration including the type of parole request made by Plaintiff (Id. ¶ 3).

Mr. Prelogar states that humanitarian parole is an extraordinary measure that would allow an individual to enter United States controlled territory on a temporary basis and that it does not circumvent the normal visa and immigration process and timelines (Id. ¶ 5). Anyone can request humanitarian parole by filing a Form I-131, Application for Travel Document, along with other forms, declarations, evidence, and fees (Id. ¶¶ 8-9). The applications undergo a preliminary assessment to determine the urgency of the request with a target of a two-day turnaround (Id. ¶ 11). Applications are prioritized based on a number of circumstances that can include the danger to the applicant, time-sensitive scheduled medical procedures or appointments, prioritization due to judicial decrees and orders, and logistical concerns (Id. ¶¶ 12-13). In particular, USCIS prioritizes applications from Afghan nationals who reside outside of Afghanistan and near a U.S. Embassy or consulate because such persons are able to complete various necessary verification procedures in person (Id. ¶ 14). There is no U.S. Embassy or consulate in Afghanistan.

After the preliminary assessment, applications are assigned to an adjudicator (Id. ¶ 16). Applications that are not expedited are handled on a first-in-first-out basis; however, the order in which applications are assessed also depends on particular circumstances or concerns. For example, a later filed application may be considered along with a more recently filed application if the applications relate to the same family (Id. ¶ 17). The adjudicator then determines whether to make a Request for More Evidence (RFE), send a Notice of Intent to Deny, or prepare the application for review by a supervisor in anticipation of approval or denial (Id. ¶ 18). Most applications are issued an RFE which delays consideration of the application (Id. ¶ 19). Delays can also occur because other agencies must conduct security checks (Id. ¶ 20). Once an application is submitted to a supervisor for review, and the supervisor concurs with the adjudicator, the

applicant is informed (Id. ¶ 21-22). If parole is denied, the applicant may appeal the decision within 30 days; if

parole is granted, additional in-person processing is required (Id. ¶ 23). Even after this process, an agent at a point of entry makes a final determination of whether parole should be granted (Id. ¶ 24). Mr. Prelogar did not provide any specific information as to Plaintiff's applications for parole.

## IV. Discussion

Federal Courts are courts of limited subject matter jurisdiction. Crain v. Crain, 72 F.4th 269, 276 (8th Cir. 2023). This Court's jurisdiction is defined by the Constitution and federal statute. Badgerow v. Walters, 596 U.S. 1, 7-8 (2022).

Plaintiff asserts that federal question jurisdiction exists because this is a "civil action[ ] arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. On the surface, this appears accurate. See, e.g., Irshad v. Johnson, 754 F.3d 604 (8th Cir. 2014) (considering an unreasonable delay claim pursuant to the APA but stating that "we need not address questions of 'statutory jurisdiction' *sua sponte*" because the issue was not raised on appeal). Plaintiff asserts that he is entitled to relief pursuant to federal law, namely the APA, MVA, and the Declaratory Judgment Act. He seeks the same relief pursuant to all three statutes: an order compelling Defendants to adjudicate his immigration applications in accordance with federal immigration law (Doc. 1, p. 4, ¶ 15). As noted above, Plaintiff bears the burden of showing subject matter jurisdiction exists. Hilger v. United States, 87 F.4th 897, 899 (8th Cir. 2023).

The APA provides that: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C § 702. The statute further provides that in reviewing

an agency decision, the Court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Similarly, MVA provides that a plaintiff may petition the Court for, and the Court has jurisdiction to issue, a writ of mandamus that would "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Claims pursuant to the APA and MVA are typically considered under the same standard. See Organization for Competitive Markets v. U.S. Dept. of Agriculture, 912 F.3d 455, 461-462 (8th Cir. 2018). There is a presumption in favor of judicial review of federal agency decisions. Kucana v. Holder, 558 U.S. 233, 251 (2010). That presumption can only be dislodged if there is clear congressional intent to prevent review. Id. at 251-252.

Plaintiff alleges that the Department of Homeland Security/Attorney General, in accordance with Section 212 of the Immigration and Nationality Act (INA), must:

> in his discretion, parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A). The statute permits the Attorney General discretionary authority to parole a foreign national into the United States or its territories for a particular purpose and to return the foreign national once the purposes of parole have been fulfilled. Plaintiff further requested that his applications for humanitarian parole be "expedited due to an urgent and severe humanitarian situation" (Doc. 1-2, p. 3).[2] Plaintiff acknowledges that the decision to grant or deny humanitarian parole is left to the discretion of the USCIS; however, he states that the agency's duty to actually adjudicate the claim in a timely manner is non-discretionary (Doc. 1, p. 4, ¶ 14).

[2] As noted above, the USCIS indicated that it is unable to expedite Plaintiff's applications (Doc. 1-2, p. 7).

Thus, Plaintiff argues that Defendants have a duty to expeditiously resolve his parole applications and that this Court has the jurisdiction to compel them to act.

Defendants argue that there is clear congressional intent to preclude judicial review and rely on the recently decided Thigulla v. Jaddou, 94 F.4th 770 (8th Cir. 2024). In that case, the plaintiffs sought relief pursuant to the APA to compel the government to determine a request to adjust their status from temporary visa holders to permanent residents pursuant to 8 U.S.C. § 1255(a).[3] Id. at 771. The Court held that 8 U.S.C. § 1252(a)(2)(B)[4] presents a jurisdictional bar

---

[3] The statute provides:

> (a) Status as person admitted for permanent residence on application and eligibility for immigrant visa
>
> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C.A. § 1255(a).

[4] This Code section provides:

> (a) Applicable provisions
>
> ***
>
> (2) Matters not subject to judicial review
>
> ***
>
> (B) Denials of discretionary relief
>
> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
>> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
>>
>> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of

to both compelling the decision regarding a status adjustment and any delay in adjudicating the same. Id. at 775-776 ("The text of § 1252(a)(2)(B)(ii) and § 1255(a) is clear and convincing evidence that Congress intended to preclude judicial review of the Attorney General's discretionary decisions about the status adjustment process under § 1255(a) like the Adjudication Hold Policy.").

Of course, this case does not involve an adjustment of status from visa holder to permanent resident. Nonetheless, the holding in Thigulla, is controlling. In reaching its decision that there was clear congressional intent to bar judicial review, the Court held the following:

> Two elements trigger § 1252(a)(2)(B)(ii)'s jurisdictional bar: (1) a decision or action by the Attorney General or the Secretary of Homeland Security and (2) statutorily specified discretion under Subchapter II of Chapter 12 of Title 8 (8 U.S.C. §§ 1151–1381) (Subchapter II)

Id. at 774. Plaintiff in this case seeks relief pursuant to § 1182, which is within Subchapter II of Chapter 12 of Title 8. The statute vests discretion to the Attorney General to grant parole "under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons . . . ." Id. at §1182(d)(5)(A). As demonstrated by Mr. Prelogar, parole decisions are subject to a variety of factors considered by the USCIS – these decisions and actions (or inactions) are similar to the Adjudication Hold Policy at issue in Thigulla. In Plaintiff's case, the USCIS has decided not to expedite Plaintiff's request (an inaction as it were) and instead consider his request pursuant to its policies. This discretionary decision is subject to the jurisdictional bar. See Soni v. Jaddou, 103 F.4th 1271, 1273 (7th Cir. 2024) (in considering a similar argument on another section of the INA, stating that "[n]o review means no review; the statue does not need to list all the many

---

> the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C.A. § 1252(a)(2)(B). Although the Section is entitled "Judicial Review of order of removal," it applies to non-removal proceedings. See Cheejati v. Blinken, 106 F.4th 388, 395-396 (5th Cir. 2024).

potential legal theories that are not reviewable"). Plaintiff has offered no counter-argument to the conclusion that his request under the APA and MVA falls within the ambit of Thigulla and that Congress has clearly set forth a jurisdictional bar to such claims. His arguments only demonstrate that he is impermissibly seeking "general legal oversight of the Legislative and Executive Branches." TransUnion LLC v. Ramirez, 594 U.S. 413, 423-424 (2021).

## V. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 5) is **GRANTED**. This matter is **DISMISSED with prejudice** for lack of subject matter jurisdiction.

***/s/ John M. Bodenhausen***
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of November, 2024